76591. WICK et al. v. BARNES et al.
(371 SE2d 443)

DEEN, Presiding Judge.

Appellants, Sally and Helen Wick, are the sisters of the late Harry Wick. Appellees are Wick's widow, Louise Barnes Wick, and her son, Leland Barnes.

The evidence showed that on June 17, 1983, seventy-five-year-old Harry Wick executed a power of attorney naming Leland Barnes his attorney-in-fact. On that date a $20,000 certificate of deposit was in the names of Harry Wick and his sisters. Leland Barnes, acting under the power of attorney, had the certificate of deposit reissued in the name of Harry Wick alone. Barnes claims that he made this change on Wick's instructions. He also claims he changed the beneficiary on Wick's insurance policy from his sister to his mother on Wick's instructions.

The day Wick executed the power of attorney he suffered a stroke and was hospitalized. He died two months later. He left a will

which bequeathed all his assets to his wife. The sisters filed suit against appellees alleging that the power of attorney was fraudulently obtained by Barnes and his mother who, they claim, exerted undue influence over Wick. A jury returned a verdict of $20,355.55 in favor of Sally and Helen Wick. After entry of the judgment, the trial court granted appellees' motion for a judgment notwithstanding the verdict and, if it was reversed on appeal, then their motion for a new trial was granted. The Wick sisters appeal. *Held*:

The evidence showed that Leland Barnes and his mother never discussed the execution of a power of attorney with Harry Wick. Indeed, Louise Wick was admitted to the intensive care unit of a hospital some two days before the document was signed. Wick's attorney, Richard Porter, who also drafted his will several months earlier, testified that Harry Wick telephoned him earlier in the day and asked him to prepare the power of attorney. Porter went to Wick's home and explained it to him before Wick executed it. Porter and his secretary witnessed Wick's signature. Porter was of the opinion that Wick was of sound mind, knew what he wanted to do and was not acting under duress or undue influence. The evidence further showed that neither Barnes nor his mother knew the contents of Wick's will, or even that he had one, until they were contacted by Richard Porter after Harry Wick's death because he left his executed will with his attorney. Other witnesses testified that they heard Wick say that he wanted all his assets to go to his wife upon his death.

A physician who treated Wick from July 7, 1983, until August 10, 1983, testified that from his treatment, observation, and review of Wick's medical records, he believed that Wick was not competent to handle his business affairs after early June. The physician who admitted him to the hospital the day he suffered a stroke testified otherwise. He testified that Wick gave a meaningful medical history when he was admitted, and that he believed that Wick could have read and understood documents placed before him on June 17. This physician testified that Wick's condition did not begin to deteriorate until the second day he was hospitalized when his right side ceased to function. Sally Wick admitted on cross-examination that her brother was competent on June 17, 1983, but claimed that he was tricked.

The undue influence which will invalidate a will must "amount to moral coercion; it must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse." *Potts v. House*, 6 Ga. 324, 325 (1849).[1] See also *DeNieff v.*

---

[1] Justice Lumpkin in *Potts*, quoting from 26 Wendell 255, recalled the "startling conclusion of Dr. Haslem, who, after years of professional observation of the phenomena of Mental Disease, when examined in the remarkable case of Miss Bagster, in answer to the customary question 'Was Miss Bagster of sound mind?' replied 'I never knew any human being who was

*Howell*, 138 Ga. 248 (75 SE 202) (1912). There is simply no evidence of undue influence in the instant case.

A "motion for judgment notwithstanding the verdict . . . can be sustained only where '(t)here is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' [Cits.]" *Georgia Power Co. v. Purser*, 152 Ga. App. 181 (262 SE2d 473) (1979).

As there was no evidence of undue influence or that Harry Wick was incompetent at the time he executed the power of attorney, the trial court did not err in granting the judgment notwithstanding the verdict.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

I agree with the majority that the trial court correctly granted appellees' motion for judgment notwithstanding the verdict. However, this case was *not* an action to set aside the power of attorney. Therefore, all of the discussion with regard to the evidence of "undue influence" is, in my opinion, not germane to the issue on appeal. This case was plainly and simply based upon the alleged *fraud* of appellees. The evidence indisputedly showed that the "essential elements of fraud and misrepresentation were lacking, and irrespective of any issues of fact with regard to other essential elements the appellees were entitled to [judgment] as a matter of law. [Cit.]" *Clements v. Warner Robins Supply Co.*, 235 Ga. 612, 614 (221 SE2d 35) (1975). It is true that our Supreme Court has recently redefined and broadened the parameters of evidence sufficient to show the reliance requirement of actionable fraud. *Florida Rock &c. Lines v. Moore*, 258 Ga. 106 (365 SE2d 836) (1988). In *Moore*, the Supreme Court stated: "We hold that the requirement of reliance is satisfied where (as in this case) A, having as his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, and whereby A's purpose of defrauding C is accomplished." *Florida Rock &c. Lines v. Moore*, supra, 107. However, *Moore* is inapplicable to the case sub judice because there is *no* evidence that any damage sustained by plaintiffs was caused by *plaintiffs'* reliance upon *any* alleged misrepresentation. The trial court correctly granted appellees' motion for judgment notwithstanding the verdict.

of sound mind.' "

DECIDED JULY 5, 1988 —
REHEARING DENIED JULY 15, 1988 — 

*Frank C. Vann*, for appellants.
*Elliott P. McCollum, Jr.*, for appellees.